IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-468-D

PAUL M. RETFALVI,                    )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          **ORDER**
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                    Defendant.       )

On September 14, 2017, Paul M. Retfalvi ("plaintiff" or "Retfalvi") filed this action against

the United States ("defendant" or "United States") seeking a tax refund under 26 U.S.C. § 7422

[D.E. 1]. On November 24, 2017, the United States moved to dismiss the complaint for failure to

state a claim [D.E. 9], and filed a memorandum in support [D.E. 10]. On December 15, 2017,

Retfalvi responded in opposition [D.E. 11]. On December 22, 2017, the United States replied [D.E.

12]. As explained below, the court grants the government's motion to dismiss.

I.

Retfalvi was born in Hungary. See Compl. [D.E. 1] ¶ 9. In December 1988, Retfalvi moved

to Canada under a restricted work permit. See id. ¶ 10. In 1993, Canada granted Retfalvi

citizenship. See id. Also in 1993, Retfalvi came to the United States on a J-1 visa to participate in

a medical residency program. See id. ¶ 11. In 1997, Retfalvi completed his medical residency and

returned to Canada to comply with his J-1 visa. See id. In 1998, Retfalvi returned to the United

States on an H1-B visa. See id. ¶ 12. While Retfalvi was living in the United States on his H1-B

visa, he purchased two condominiums in Vancouver, Canada because he needed a place to live if

he had to leave the United States and return to Canada. See id. ¶¶ 13–14. In February 2005, the

United States granted Retfalvi permanent resident status. See id. ¶ 15. In 2006, Retfalvi sold his condominiums in Vancouver because he planned to remain in the United States. See id. ¶¶ 15–16. In March 2007, Retfalvi and his wife filed separate Canadian tax returns for the 2006 tax year and each reported one-half of the sales of the two condominiums. See id. ¶ 17. Retfalvi and his wife also filed a joint United States income tax return for the 2006 tax year and reported the condominium sales. See id.

In June 2007, the Canada Revenue Agency began an audit of Retfalvi's 2006 tax return. See id. ¶ 18. In June 2010, Retfalvi became a United States citizen. See id. ¶ 21. In 2011, the Canada Revenue Agency completed its audit and concluded that Retfalvi improperly accounted for the sale of the condominiums and issued a tax deficiency. See id. ¶¶ 18–19. The Canada Revenue Agency gave Retfalvi 90 days to file an appeal with the Canadian Tax Court, but he failed to do so. See id. ¶ 20. Thus, on October 3, 2011, Retfalvi's Canadian tax liability became final. See id.

After Retfalvi failed to pay his Canadian tax liability, the Canada Revenue Agency sent the Internal Revenue Service ("IRS") a Mutual Collection Assistance Report pursuant to Article 26A of the Third Protocol of the United States-Canada Income Tax Convention (the "Treaty"). See [D.E. 10] 10. Article 26A authorizes the IRS to collect Canadian tax assessments on behalf of the Canadian government. See [D.E. 10] 7; Convention Between the United States of America and Canada with Respect to Taxes on Income and Capital, Article 26A, Sept. 26, 1980, T.I.A.S. No. 11087, 1986–2 C.B. 258; Mar. 17, 1995, U.S.–Canada, art. 15, S. Treaty Doc. No. 104–4 ("Article 26A"). Specifically, Article 26A provides that the United States and Canada will "undertake to lend assistance to each other in the collection of taxes referred to in paragraph 9 [of this article], together with interest, costs, additions to such taxes and civil penalties, referred to . . . as a 'revenue claim.'" Article 26A ¶ 1. Article 26A also provides

2

2. An application for assistance in the collection of a revenue claim shall include a certification by the competent authority of the applicant State that, under the laws of that State, the revenue claim has been finally determined. For the purposes of this Article, a revenue claim is finally determined when the applicant State has the right under its internal law to collect the revenue claim and all administrative and judicial rights of the taxpayer to restrain collection in the applicant State have lapsed or been exhausted.

3. A revenue claim of the applicant State that has been finally determined may be accepted for collection by the competent authority of the requested State and, subject to the provisions of paragraph 7, if accepted shall be collected by the requested State as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes.

4. Where an application for collection of a revenue claim in respect of a taxpayer is accepted

(a) By the United States, the revenue claim shall be treated by the United States as an assessment under United States laws against the taxpayer as of the time the application is received; and
(b) By Canada, the revenue claim shall be treated by Canada as an amount payable under the Income Tax Act, the collection of which is not subject to any restriction.

5. Nothing in this Article shall be construed as creating or providing any rights of administrative or judicial review of the applicant State's finally determined revenue claim by the requested State, based on any such rights that may be available under the laws of either Contracting State. If, at any time pending execution of a request for assistance under this Article, the applicant State loses the right under its internal law to collect the revenue claim, the competent authority of the applicant State shall promptly withdraw the request for assistance in collection.

Article 26A ¶¶ 2–5.

In accordance with Article 26A, on November 16, 2015, the IRS sent Retfalvi a "Final Notice-Notice of Intent to Levy" requiring Retfalvi to pay his Canadian revenue claim of $124,286.23. See Compl. ¶ 22. On January 13, 2016, Retfalvi objected to the notice of intent to levy, requested a hearing, and subsequently filed a statement in opposition. See id. ¶ 24. The IRS informed Retfalvi, among other things, that the IRS had no authority to adjust the liability and that

3

the IRS would not consider any arguments concerning the validity or correctness of the revenue claim. See id. ¶ 25. On February 23, 2016, Retfalvi filed a Form 12153 with the IRS and requested a hearing through the Collection Due Process ("CDP") program under section 6630 of the Internal Revenue Code. See id. ¶ 26. The IRS rejected Retfalvi's CDP hearing request and informed him that only a Collection Appeal Procedure ("CAP") was available to him. See id. ¶ 27. On March 24, 2016, the IRS denied Retfalvi's CAP hearing request because "challenges to the existence or amount of a liability are excluded issues under the Collection Appeals Program. The Appeals Office does not have the authority to adjust a foreign tax liability." Id. ¶ 29 (quotation omitted).

On April 12, 2016, Retfalvi filed a complaint seeking a declaratory judgment and injunctive relief. See Retfalvi v. Comm'r of IRS, 216 F. Supp. 3d 648 (E.D.N.C. 2016). Retfalvi asserted, among other things, that Article 26A is unconstitutional and invalid. See id. at 651. The United States moved to dismiss Retfalvi's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See id. The court granted the United States's motion and dismissed the complaint for lack of subject-matter jurisdiction because section 7421(a) of the Internal Revenue Code precludes federal courts from hearing cases which seek to restrain tax collection. See id. at 652; 26 U.S.C. § 7421. In order to challenge a tax assessment, the taxpayer must first pay the amount due, and then file a refund complaint under section 7422 of the Internal Revenue Code. See 26 U.S.C. § 7422; Retfalvi, 216 F. Supp. 3d at 654.

On December 22, 2016, Retfalvi paid the assessment. See Compl. ¶ 36. On February 24, 2017, Retfalvi filed a refund claim with the IRS. See id. ¶ 37. On June 15, 2017, the IRS rejected Retfalvi's refund claim. See id. ¶ 38. On September 14, 2017, Retfalvi filed this complaint. Retfalvi challenges the constitutionality of Article 26A. Retfalvi contends that (1) Article 26A

4

violates the Origination Clause because it is a bill to raise revenue that did not originate in the House of Representatives; (2) Article 26A is invalid because it is not self-executing; (3) Article 26A violates the Taxing Clause because Congress has the exclusive authority to lay and collect taxes; (4) Article 26A violates the Taxing Clause because Congress cannot use its taxing power to levy or collect taxes of a foreign country; (5) Article 26A violates the Taxing Clause because it purports to amend the Internal Revenue Code; (6) the IRS is not authorized to assess and collect taxes imposed by Canadian laws; (7) Article 26A denies taxpayers due process; (8) Article 26A denies taxpayers equal protection of the law that is available to taxpayers who have had taxes assessed under the Internal Revenue Code; and (9) Article 26A creates an impermissible sub-classification of United States taxpayers. See id. ¶¶ 44–131.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. A plaintiff's allegations must "nudge [his]

claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

A.

As for Retfalvi's claim that Article 26A violates the Origination Clause, Retfalvi contends that Canada and the United States included Article 26A in the treaty to raise revenue. See Compl. ¶¶ 47, 51. Retfalvi also contends that the Origination Clause covers all laws relating to taxes. See id. ¶ 46; [D.E. 11] 12–13.

The Origination Clause states that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1. The meaning of the phrase "raising revenue" has caused considerable debate. See Rebecca M. Kysar, *On the Constitutionality of Tax Treaties*, 38 YALE J. INT'L L. 1, 7–11 (2013). The Supreme Court has considered the meaning of "raising revenue" in numerous cases but has never found an Origination Clause violation. See United States v. Munoz-Flores, 495 U.S. 385, 397–401 (1990); Rainey v. United States, 232 U.S. 310, 317 (1914); Flint v. Stone Tracy Co., 220 U.S. 107, 142–43 (1911); Millard v. Roberts, 202 U.S. 429, 436–38 (1906); Twin City Nat'l Bank v. Nebecker, 167 U.S. 196, 202–03 (1897); see also Sissel v. U.S. Dep't of Health & Human Servs., 799 F.3d 1035, 1036 (D.C. Cir. 2015). In Munoz-Flores, the Supreme Court discussed the Origination Clause and concluded that a bill that created a governmental program, and raised revenue to support that program, did not violate the Origination Clause. In so holding, the Court stated that "a statute that creates a particular governmental program and that raises revenue to support that program, as opposed to a statute that raises revenue to support Government generally, is not a 'Bil[l] for raising Revenue' within the meaning of the Origination Clause." Munoz-Flores, 495 U.S. at 398 (alteration in original); see J. STORY, 2 COMMENTARIES ON THE CONSTITUTION OF THE UNITED

6

STATES § 877 (1833).

Retfalvi cites Armstrong v. United States, 759 F.2d 1378 (9th Cir. 1985), and argues that all tax-related laws (including treaties) must comply with the Origination Clause. See [D.E. 11] 13. However, Armstrong cannot bear the weight that Retfalvi places on it. In Armstrong, the United States Court of Appeals for the Ninth Circuit considered whether the Tax Equity and Financial Responsibility Act of 1982 ("TEFRA") violated the Origination Clause. See Armstrong, 759 F.2d at 1379. TEFRA was introduced in the House of Representatives, and the bill in its original form would have reduced tax revenues. See id. at 1380–81. The Senate then amended the bill, and the amended version, which Congress ultimately passed, increased tax revenues. See id. at 1381. Armstrong argued that TEFRA "originated" as a bill to raise revenue in the Senate, and thereby violating the Origination Clause. See id. In rejecting Armstrong's argument, the Ninth Circuit held that "[t]he term 'Bills for raising Revenue' does not refer only to laws increasing taxes, but instead refers in general to all laws relating to taxes." Id. (emphasis omitted); cf. Tex. Ass'n of Concerned Taxpayers v. United States, 772 F.2d 163, 165–68 (5th Cir. 1985); Wardell v. United States, 757 F.2d 203, 205 (8th Cir. 1985) (per curiam); Heitman v. United States, 753 F.2d 33, 35 (6th Cir. 1984); Moore v. U.S. House of Representatives, 733 F.2d 946, 948–56 (D.C. Cir. 1984).

Armstrong and the other cited cases do not address whether all tax-related laws (including treaties) must comply with the Origination Clause. Rather, the cited cases, at most, recognize that the Origination Clause is implicated when a bill either increases or decreases revenue designed to fund the government generally. See, e.g., Nebecker, 167 U.S. at 202–03 ("[R]evenue bills are those that levy taxes, in the strict sense of the word."). Thus, these cases comport with the Origination Clause's original public meaning, which was to give the House of Representatives, the legislative body more closely connected to the will of the people, more power over bills concerning "the

7

optimal level of taxation." See Rebecca M. Kysar, *On the Constitutionality of Tax Treaties*, 38 YALE J. INT'L L. 1, 7 (2013); Skinner v. Mid-Am. Pipeline Co., 490 U.S. 212, 221 (1989).

Article 26A does not violate the Origination Clause for at least two reasons. First, it is not a bill. Second, it does not impose a tax, increase a tax, or decrease a tax that was created to fund the government generally. Instead, Article 26A is an agreement between the United States and Canada to help each other collect unpaid and overdue taxes. Under Article 26A, the IRS may only collect taxes for Canadian authorities that have been "finally determined." Article 26A ¶ 2. A tax is "finally determined" when Canada has the right under its internal law to collect the tax and all judicial and administrative remedies have been exhausted. See id. When the IRS accepts Canada's request for assistance in collecting a revenue claim, the revenue claim is treated as an assessment under United States law. See id. ¶ 4. The IRS has statutory authority to make assessments of unpaid taxes and to collect such taxes. See 26 U.S.C. §§ 6201, 6301; United States v. Spence, No. 08–CV–5271, 2010 WL 1463482, at *4 (N.D. Ill. Apr. 8, 2010) (unpublished). An assessment is an administrative determination that "a certain amount is currently due and owing as a tax." Rambo v. United States, 492 F.2d 1060, 1061 n.1 (6th Cir. 1974); see Hansen v. United States, 455 F. Supp. 1367, 1369 (W.D. Mo. 1978). A tax assessment "establishes a prima facie case of liability and nothing more." Kurio v. United States, 281 F. Supp. 252, 255 n.5 (S.D. Tex. 1968); see United States v. Lease, 346 F.2d 696, 698 (2d Cir. 1965). Thus, Article 26A merely directs the IRS to make an administrative determination that a tax is due to Canada and to collect such tax. Article 26A does not violate the Origination Clause.

### B.

The Taxing Clause states that "[t]he Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises." U.S. Const. art. I, § 8, cl. 1. Retfalvi argues that Article 26A violates

8

the Taxing Clause for numerous reasons. First, Retfalvi contends that the Taxing Clause grants Congress the exclusive power to lay and collect taxes. See Compl. ¶¶ 64–71. Thus, because the House of Representatives did not pass Article 26A, it violates the Taxing Clause. See id. ¶ 69.

The court rejects Retfalvi's argument. Article I, section 8 does not grant Congress the exclusive power to "lay and collect Taxes" and thereby prohibit the President from entering into a treaty concerning taxes. See Skinner, 490 U.S. at 220–22; Edwards v. Carter, 580 F.2d 1055, 1057–58 (D.C. Cir. 1978) (per curiam); Lidas, Inc. v. United States, No. CV–98–4503–DT(RCX), 1999 WL 164409, at *5 (C.D. Cal. Feb 5, 1999) (unpublished) ("Other Article 1 provisions, such as the Article 1, § 8 enumerated powers, do not preclude the availability of self-executing treaties."), aff'd, 238 F.3d 1076 (9th Cir. 2001). In Skinner, the Supreme Court distinguished between the Taxing Clause, which allows Congress to share and delegate its power, and the Origination Clause, which mandates that "revenue-raising" bills originate with the House of Representatives. See Skinner, 490 U.S. at 221. Similarly, in Edwards, 60 members of the House of Representatives challenged a self-executing treaty that conveyed to Panama certain United States properties. See Edwards, 580 F.2d at 1055–56. The members argued that the treaty was unconstitutional and that the Property Clause, Art. IV, § 3, cl. 2, grants Congress the exclusive power to dispose of United States property. See id. at 1056. The Property Clause provides that

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

U.S. Const. art. IV, § 3, cl. 2. In rejecting the argument that the Property Clause provides Congress with an exclusive grant of power, the United States Court of Appeals for the D.C. Circuit held that the Property Clause is "intended to permit Congress to accomplish through legislation what may

concurrently be accomplished through other means provided in the Constitution." Edwards, 580 F.2d at 1058. Thus, because the Constitution grants the President the power to enter into treaties, the President may use his treaty powers to dispose of United States property. See id. at 1058–59. The D.C. Circuit also compared the Property Clause to Article 1, section 8, and distinguished the Property Clause from other clauses, such as the Expenditure Clause, Art. I, § 9, cl. 7, and the Origination Clause, Art. I, § 7, cl. 1, which do provide Congress with the exclusive means for enacting legislation. See id. at 1057–59. Thus, although the Taxing Clause provides that "Congress shall have power," this language does not grant Congress exclusive power. See Skinner, 490 U.S. at 221; Edwards, 580 F.2d at 1058. Rather, the President may use his treaty power under Art. 2, § 2, cl. 2, to enter into a treaty concerning taxes. Accordingly, this claim fails.

Next, Retfalvi contends that Article 26A is unconstitutional because the Taxing Clause does not allow Congress to use its taxing power to lay and collect foreign taxes. See Compl. ¶¶ 72–76. Contrary to Retfalvi's argument, Congress did not enact Article 26A. Rather, the President used his treaty power to adopt Article 26A, which provides the IRS with the authority to assist the Canada Revenue Agency in collecting Canadian taxes from persons within the IRS's jurisdiction. A treaty may not violate another prohibition or limitation in the Constitution. See, e.g., Reid v. Covert, 354 U.S. 1, 16 (1957); United States v. Yian, 905 F. Supp. 160, 163 (S.D.N.Y. 1995). Article 26A, however, does not violate the Taxing Clause or the Origination Clause, and Retfalvi has not cited any other constitutional or statutory authority that would prohibit the President from entering into Article 26A pursuant to his treaty powers. Cf. Edwards, 580 F.2d at 1058. Accordingly, this claim fails.

Retfalvi also argues that Article 26A is unconstitutional because it purports to amend the Internal Revenue Code. See Compl. ¶¶ 79–97. Section 6201 of the Internal Revenue Code

authorizes the Treasury Secretary to "make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by" the Internal Revenue Code. 26 U.S.C. § 6201. Similarly, section 6301 authorizes the Treasury Secretary to "collect the taxes imposed by" the Internal Revenue Code. 26 U.S.C. § 6301. Retfalvi contends that Article 26A attempts to amend sections 6201 and 6301 by (1) authorizing the IRS to assess and collect taxes that are not imposed by the Internal Revenue Code and (2) treating a Canadian revenue claim as an assessment under United States law. See Compl. ¶¶ 80–83, 92–95.

Article 26A does not amend sections 6201 and 6301. Where a statute and a treaty "pertain to the same subject matter, they must be read so as to give effect to both if at all possible." Jamieson v. Comm'r of Internal Revenue, No. 16421–05, 2008 WL 1883991, at *4 (T.C. Apr. 29, 2008) (unpublished); see Whitney v. Robertson, 124 U.S. 190, 194 (1888). "[I]f a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." United States v. A.L. Burbank & Co., 525 F.2d 9, 14 (2d Cir. 1975). If the treaty and the statute cannot be ready in harmony, the last in time rule applies. See, e.g., Whitney, 124 U.S. at 194; Kappus v. Comm'r of Internal Revenue, 337 F.3d 1053, 1056 (D.C. Cir. 2003).

Article 26A and sections 6201 and 6301 can be read harmoniously. Article 26A provides the IRS with the authority to assess and collect taxes deemed "finally determined" by Canadian tax authorities and to treat any such revenue claim as an assessment under United States law. Sections 6201 and 6301 provide the IRS with the authority to assess and collect taxes imposed by the Internal Revenue Code. Thus, read together, Article 26A and sections 6201 and 6301 provide the IRS with the authority to assess and collect both Canadian revenue claims accepted by the United States under Article 26A and taxes imposed by the Internal Revenue Code. Accordingly, Article 26A and the

Internal Revenue Code do not conflict. See A.L. Burbank & Co., 525 F.2d at 13–14 ("It is natural that the Internal Revenue Code refers . . . to . . . United States law, since it was written as a United States tax law, but to read it to exclude the use of the very procedures to which the Treaty refers not only thwarts the purpose of the Treaty but also ignores well settled rules of construction.").

To the extent that Retfalvi contends that Article 26A is invalid because it is not self-executing, see Compl. ¶¶ 56–63, this claim fails. A treaty is not self-executing "if the agreement would achieve what lies within the exclusive law-making power of Congress under the Constitution." Restatement (Third) of Foreign Relations Law § 111 cmt. i (Am. Law. Inst. 1987); see Carlos Manuel Vazquez, *The Four Doctrines of Self-Executing Treaties*, 89 AM. J. INT'L L. 695, 718 (1995). Article 26A does not infringe on any of Congress's exclusive power and is self-executing.

## C.

As for Retfalvi's due process claim, Retfalvi alleges that Article 26A violates his due process rights because Article 26A denies taxpayers "in the requested State, any right under their (the requested State's) laws with respect to the assessment of taxes." Compl. ¶ 103; see id. ¶¶ 104–110. Article 26A precludes the United States from reviewing the validity of Canada's revenue claim. See Article 26A ¶ 5. Thus, Retfalvi contends that Article 26 violates his due process rights because he was not provided with the administrative and judicial review available under sections 6213 and 6330 of the Internal Revenue Code. See Compl. ¶ 104.

Retfalvi's due process challenge to Article 26A's collection assistance procedures appears to be a matter of first impression. Cf. Dewees v. United States, 272 F. Supp. 3d 96, 101–02 (D.D.C. 2017) (considering taxpayer's due process challenge to Canadian tax authorities collecting tax on behalf of IRS). Courts, however, have frequently considered the enforceability of foreign judgments

12

in United States courts. A foreign tax assessment is similar to a foreign judgment. See Rambo, 492 F.2d at 1061 n.1.[1] A foreign judgment "cannot be enforced in a U.S. court unless it was obtained under a system with procedures compatible with the requirements of due process of law." Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 594 (5th Cir. 2003); see Hilton v. Guyot, 159 U.S. 113, 205–06 (1895); Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1410 (9th Cir. 1995). Nonetheless, nothing requires that the foreign country's procedures exactly conform with the procedures available in the United States. See, e.g., Embotelladora, 347 F.3d at 594; Bird v. Glacier Elec. Coop., Inc., 255 F.3d 1136, 1140–44 (9th Cir. 2001); Soc'y of Lloyd's v. Ashenden, 233 F.3d 473, 476–77 (7th Cir. 2000).

As for Retfalvi's argument that Article 26A deprives him of due process because he was not afforded the same rights to administrative and judicial review as provided by sections 6213 and 6330 of the Internal Revenue Code, this argument fails. As discussed, Retfalvi was provided with the right to file an appeal with the Canadian Tax Court. See Compl. ¶ 20. The Due Process Clause does not require a "single model of procedural fairness, let alone a particular form of procedure." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 483 (1982); Mitchell v. W. T. Grant Co., 416 U.S. 600, 610 (1974). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted); see Capitol Mortg. Bankers, Inc. v. Cuomo, 222 F.3d 151, 155–56 (4th Cir. 2000). Thus, the Due Process Clause does not mandate that Retfalvi be provided with the specific procedures in sections 6213 and 6303. Similarly, the Due Process Clause does not require that a foreign country's

---

[1] The "revenue rule," a common law doctrine, generally provides that "the courts of one sovereign will not enforce the tax judgments or claims of another sovereign." Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 106 (2d Cir. 2001). A treaty, however, can override the revenue rule. See Her Majesty the Queen ex rel. B.C. v. Gilbertson, 597 F.2d 1161, 1165 (9th Cir. 1979).

procedures replicate the procedures afforded under United States law. See, e.g., Embotelladora, 347 F.3d at 594; Bird, 255 F.3d at 1140– 44; Ashenden, 233 F.3d at 476–77. Retfalvi has failed to plausibly allege that the procedures afforded to him under Canadian law violate the Due Process Clause. Thus, this claim fails.

D.

Retfalvi argues that Article 26A violates the equal protection guarantee of the Fifth Amendment in numerous ways. First, Retfalvi contends that

> by automatically assessing Plaintiff under the United States Income Tax system, i.e., the Internal Revenue Code[,] without notice and without affording Plaintiff any administrative, judicial or other rights given [to] other taxpayers in connection with tax assessments under the Internal Revenue Code, Plaintiff has been denied equal protection of the laws otherwise available to other taxpayers with respect to such assessments and guaranteed to Plaintiff by application of the [D]ue [P]rocess [C]lause of the Fifth Amendment of the US Constitution.

Compl. ¶ 114. In essence, Retfalvi argues that Article 26A denied him equal protection because he was not provided with the same administrative and judicial remedies available to taxpayers with United States tax liabilities. See id. ¶¶ 115–17. Second, Retfalvi contends that Article 26A creates arbitrary sub-classifications of U.S. citizens because Article 26A does not apply when the taxpayer can demonstrate that the revenue claim relates "to a taxable period in which the taxpayer was a citizen of the requested State." Article 26A ¶ 8; see Compl ¶¶ 122–24. Thus, "a U.S. citizen liable for a revenue claim in the requesting State would be exempt from Article 26A coverage while another U.S. citizen would be liable for a revenue claim in the requested State for the same tax year, simply due to the date one became a U.S. citizen." Compl. ¶ 124.

The Fifth Amendment Due Process Clause contains an equal protection guarantee. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954); Skelly v. I.N.S., 168 F.3d 88, 91 (2d Cir. 1999). The equal protection guarantee under the Fifth and Fourteenth Amendments are identical. See Adarand

14

Constructors, Inc. v. Pena, 515 U.S. 200, 217 (1995); Stop Reckless Econ. Instability Caused by Democrats v. FEC, 814 F.3d 221, 233 (4th Cir. 2016). The equal protection guarantee "forbids arbitrary differentiations among groups of persons who are similar in all aspects relevant to attaining the legitimate objectives of legislation." Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir. 2007); see United States v. Timms, 664 F.3d 436, 447 (4th Cir. 2012). Unless the law at issue affects a fundamental right or a protected class, "courts generally accord the [law] a strong presumption of validity by applying a rational basis standard of review." Wilkins v. Gaddy, 734 F.3d 344, 347 (4th Cir. 2013) (quotation omitted); see Heller v. Doe, 509 U.S. 312, 319 (1993). When federal law classifies persons on the basis of alienage, rational basis review applies. See Mathews v. Diaz, 426 U.S. 67, 81–85 (1976); Korab v. Fink, 797 F.3d 572, 578–79 (9th Cir. 2014); City of Chicago v. Shalala, 189 F.3d 598, 603–04 (7th Cir. 1999); United States v. Lue, 134 F.3d 79, 86–87 (2d Cir. 1998). Under rational basis review, a law "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate . . . interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985); see FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313–15 (1993); Gaddy, 734 F.3d at 347–48. Furthermore, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Beach, 508 U.S. at 315.

As for Retfalvi's first claim, Retfalvi has failed to plausibly allege that Article 26A treats him "differently from others with whom he is similarly situated." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); see [D.E. 11] 19. Taxpayers with Canadian revenue claims are not similarly situated to taxpayers without Canadian revenue claims. Moreover, even assuming Retfalvi could satisfy the similarly situated inquiry, any such classification is rationally related to a legitimate government objective. The Treaty (including Article 26A) was enacted to expand trade and investment between

15

the United States and Canada and to "permit[] collection of tax liabilities in Canada in exchange for assisting Canada in collecting tax liabilities in the United States." [D.E. 10] 27–28; see David J. Marchitelli, *Canada-United States Convention with Respect to Taxes on Income and on Capital and Subsequent Protocols*, 28 A.L.R. FED. 3D ART. 1 (2018). Preventing the United States from reviewing the validity of a finally determined Canadian revenue claim is rationally related to the objective of working with Canada to collect outstanding tax liabilities. If the United States inquired into the validity of Canadian revenue claims, it would impede collection efforts and frustrate foreign policy and foreign relations. See, e.g., R.J. Reynolds Tobacco Holdings, 268 F.3d at 114 ("Extraterritorial tax enforcement directly implicates relations between our country and other sovereign nations. . . . To pass judgment upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court . . . ." (quotation and alteration omitted)).

Retfalvi's second claim also fails because the classification is rationally related to a legitimate government objective. As stated, the Treaty represents an agreement between the United States and Canada to work together to expand trade and investment and to help each other collect outstanding tax liabilities. As part of the Treaty, both countries agreed that they would not assist in collecting outstanding revenue claims for years in which the taxpayer was a citizen of the requested state. See R.J. Reynolds Tobacco Holdings, 268 F.3d at 116–22. This agreement reflects our government's policy preference against enforcing foreign tax laws. See id. at 117–18. In numerous tax treaties, the Senate "gave its advice and consent to those treaties subject to an understanding that the countries would only provide such collection assistance as would be necessary to ensure that the exemption or reduced rate of tax granted by the treaties would not be enjoyed by persons not entitled to those benefits." Id. at 117 (quotation omitted). Thus, the classification is rationally related to the legitimate interest of working collaboratively with Canada while still limiting our government's

16

involvement in enforcing foreign tax laws.  Cf. id. at 121–22 ("Before entering the 1995 Canada–U.S. Protocol, our government carefully considered whether and to what extent extraterritorial tax enforcement was advisable.").  Accordingly, Retfalvi's equal protection claim fails.

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 9].  The clerk shall close the case.

SO ORDERED.  This  15  day of August 2018.

JAMES C. DEVER III
Chief United States District Judge